**CORRECTED**                                                [PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-15477

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 29, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 00-00900-CV-F-N

ROBERT P. HEFFNER, JR.,
individually and on behalf of
all those similarly situated,

                                        Plaintiff-Counter-
                                        Defendant-Appellee,

versus

BLUE CROSS AND BLUE SHIELD OF ALABAMA, INC.,

                                        Defendant-Counter-
                                        Claimant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(March 29, 2006)**

Before CARNES and PRYOR, Circuit Judges, and FORRESTER[*], District Judge.

_____

[*] Honorable J. Owen Forrester, United States District Judge for the Northern District of
Georgia, sitting by designation.

CARNES, Circuit Judge:

In this interlocutory appeal we must decide whether the district court abused its discretion in certifying, under Fed. R. Civ. P. 23(b)(2), a class consisting of as many as 240,000 participants and beneficiaries of hundreds of group health plans. The plaintiffs seek a refund of their calendar year deductibles from their common claims administrator, Blue Cross and Blue Shield of Alabama (Blue Cross). They claim that because the summary plan descriptions (SPDs) issued by Blue Cross in connection with their respective plans stated that there was no calendar year deductible, Blue Cross violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 et seq., by imposing the deductibles. The complaint asserts a claim to enforce the plaintiffs' rights under their plans; that claim arises under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). It also asserts breach of fiduciary duty claims arising under ERISA § 502(a)(2) and § 502(a)(3), 29 U.S.C. § 1132(a)(2), (a)(3).

We conclude that the district court abused its discretion in certifying under Rule 23(b)(2) the plaintiffs' ERISA § 502(a)(1)(B) and § 502(a)(3) claims because in order to prevail each plaintiff must prove reliance on the SPD, thereby making final injunctive or declaratory relief inappropriate for the class as a whole. We also conclude that the district court abused its discretion by failing to address separately

2

the plaintiffs' breach of fiduciary duty claim under § 502(a)(2) seeking relief for their respective plans. Accordingly, we will vacate the district court's class certification order and remand the case for further proceedings.

## I.

In 1997 Robert Heffner began working as a division claims manager at Consolidated Insurance Management Corporation in Mobile, Alabama. Shortly thereafter, he and his family enrolled in a group health care plan sponsored by Funding Plus of America, Inc., made available through his employment with Consolidated. The Heffners' coverage under the Funding Plus Plan began April 1, 1997.

The Funding Plus Plan is an "employee welfare benefit plan" governed by ERISA, see 29 U.S.C. § 1002(1)(A), as well as a "group health plan," see id. § 1191b(a)(1). It also may be referred to as an "employee benefit plan" or as, simply, a "plan." See id. § 1002(3). All employee benefit plans must be established, maintained, and administered in accordance with the provisions of ERISA. See id. § 1003(a)(1). "ERISA has two central goals: (1) protection of the interests of employees and their beneficiaries in employee benefit plans . . . ; and (2) uniformity in the administration of employee benefit plans . . . ." Horton v.

3

Reliance Standard Life Ins. Co., 141 F.3d 1038, 1041 (11th Cir. 1998) (citations omitted).

During all time periods relevant to this case, Blue Cross underwrote and administered the Funding Plus Plan in which the Heffners were enrolled. That plan gave Blue Cross "complete discretion to interpret and administer the provisions of the Plan" and provided that Blue Cross' "administrative functions include paying claims, determining medical necessity, etc." In addition to underwriting plans such as the Funding Plus Plan, Blue Cross serves as third-party administrator for self-funded plans in which the employer or plan sponsor is responsible for paying claims. As "the party that controls administration of the plan," Blue Cross is "[t]he proper party defendant in an action concerning ERISA benefits." See Garren v. John Hancock Mut. Life. Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997).

To the extent that it has discretionary authority or control over a plan, Blue Cross is a fiduciary under ERISA. See 29 U.S.C. § 1002(21)(A)(i), (iii); Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 113, 109 S. Ct. 948, 956 (1989); see Cotton v. Mass. Mut. Life. Ins. Co., 402 F.3d 1267, 1277 (11th Cir. 2005). As a fiduciary, Blue Cross must administer each plan "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries" and "in accordance with

4

the documents and instruments governing the plan . . . ." 29 U.S.C. § 1104(a)(1)(A)(i), (D).

Under ERISA, each plan participant or beneficiary must be provided a summary plan description (SPD) within 90 days of enrollment. 29 U.S.C. § 1024(b)(1)(A). SPDs must "be written in a manner calculated to be understood by the average plan participant" and "reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." Id. § 1022(a). They must contain certain information about the administration of the plan and a participant's rights under it. Id. § 1022(b). Additionally, SPDs for group health care plans such as the Funding Plus Plan are required to include information concerning cost-sharing (e.g., premiums, deductibles, coinsurance, and copayment amounts), limitations on benefits, the plan's coverage, rules governing the plan network, and conditions or limitations on obtaining care or benefits under the plan. See 29 C.F.R. § 2520.102-3(j)(3).

Upon enrolling in the Funding Plus Plan, Heffner received a copy of the Funding Plus SPD, which was prepared by Blue Cross specifically for that plan in June 1995. Blue Cross used standardized templates to generate each plan's SPD, varying the language according to the specific requirements of the plan. Blue

5

Cross issued new SPDs for the Funding Plus Plan in August 1998 and June 1999 to reflect amendments made to the plan.

Both the August 1998 and June 1999 SPDs also incorporated language that Blue Cross contends was a scrivener's error and which is the root of this lawsuit. Specifically, those SPDs indicated that no deductible was required for certain medical services obtained from a Participating Provider Organization (PPO). For example, the June 1999 SPD provided under the heading "PPO" in the Prescription Drugs section that coverage of brand name drugs was: "80% when purchased at a Participating Pharmacy, subject to the calendar year deductible." That provision was set out in the SPD in a table like this one:

| PRESCRIPTION DRUGS | | |
|---|---|---|
| Benefit | PPO | Non-PPO |
| **Point-of-Sale Drug Program** | **Generic:** 100% when purchased at a Participating Pharmacy, subject to the calendar year deductible<br><br>**Brand Name:** 80% when purchased at a Participating Pharmacy, subject to the calendar year deductible<br><br>Note: No benefits are available for prescription drugs purchased at a Non-Participating Pharmacy in Alabama<br><br>Mental and Nervous drugs are covered at 50%, subject to the calendar year deductible | **Generic:** 100% of the allowed amount, subject to the calendar year deductible<br><br>**Brand Name:** 80% of the allowed amount, subject to the calendar year deductible<br><br>Note: No benefits are available for prescription drugs purchased at a Non-Participating Pharmacy in Alabama<br><br>Mental and Nervous drugs are covered at 50%, subject to the calendar year deductible |

The June 1999 SPD, in the General Provisions section, also provided that the calendar year deductible[1] for services obtained from a PPO was, in fact, "No deductible." That provision of the SPD was set out in table form like this:

| GENERAL PROVISIONS | | |
|---|---|---|
| | PPO | Non-PPO |
| Calendar Year Deductible | No deductible | $200 per person per calendar year; maximum of three deductibles per family |

Read together, these two provisions indicate that the plan covered eighty percent of the cost of brand name drugs purchased at a participating pharmacy subject to a calendar year deductible of nothing. Other provisions that could be read this way included those involving durable medical equipment, ambulance service, chiropractic services, and outpatient psychiatric services for some plan participants.

Heffner interpreted the June 1999 SPD provisions as imposing no calendar year deductible for prescription drugs and was not pleased when Blue Cross imposed one.[2] After discussing the matter with members of the human resources

---

[1] Some SPDs, including the August 1998 Funding Plus SPD, use the term "Major Medical deductible" instead of "calendar year deductible." The two terms are interchangeable. For consistency, we use only the term "calendar year deductible" in this opinion.

[2] The complaint alleges that Blue Cross improperly imposed deductibles totaling $240.19 for Heffner's family in 1999.

department where he worked, Heffner contacted Blue Cross three times from September 1999 to March 2000. He demanded that Blue Cross reimburse him for the "improperly withheld" deductibles. Blue Cross responded that there was a deductible requirement for all drug benefits under the Funding Plus Plan and advised Heffner that he could request arbitration if he wished to dispute its interpretation.

Arbitration was never begun. Instead, Heffner filed suit against Blue Cross in the Middle District of Alabama in July 2000. Heffner sought to represent a class of plaintiffs to whom Blue Cross issued SPDs containing language identical or similar to the "No deductible" language in the Funding Plus SPD and against whom Blue Cross had imposed deductibles. Heffner asserted two counts against Blue Cross on behalf of the class and sought various forms of relief which we will describe in more detail later.

During class issues discovery, Blue Cross produced evidence that it used SPD templates containing the "No deductible" language from April 1997 through September 2000, two months after this lawsuit was filed, and that SPDs containing that language may have been sent to plan participants and beneficiaries as late as October 2001. By its own estimate, Blue Cross stated that during that time, the language may have found its way into SPDs for approximately 1,241 employee

8

benefit plans, including 627 plans underwritten and administered by Blue Cross and 614 self-funded plans.[3] These plans covered potentially 240,000 individuals.

The district court certified the class action in August 2004. The court adopted Heffner's proposed class definition: "All participants and beneficiaries in ERISA-covered medical benefit plans for which Blue Cross . . . served as claims administrator." Order at 6. Class membership was limited to participants and beneficiaries in Blue Cross-administered plans whose SPD contained "the term 'no deductible' . . . under 'PPO'" "in a matrix . . . identical or similar to the [General Provisions table shown earlier]" and who had a calendar year deductible "imposed upon them by [Blue Cross]" for various services.[4] Id. at 6–7. The court modified Heffner's class definition "to include the stipulation that [Heffner] only represents those participants and beneficiaries whose SPDs contain language defining the summary plan description as the plan." Id. at 22. The court also reserved "the right to create a subclass, modify the class definition, or otherwise specially treat the class members subject to arbitration at a later juncture." Id. at 19.

---

[3] Blue Cross maintains that it cannot state with certainty the exact number of plans provided SPDs with the "no deductible" language for three reasons. First, some plans produce their own SPDs. Second, SPD language varies significantly across plans, particularly across self-funded plans. Third, Blue Cross may not have provided new SPDs to the plan sponsor during the relevant time frame.

[4] In order to avoid recusal problems, the class definition explicitly excluded "judges and their relations within three degrees of kinship." Order at 7.

The court found that all four Rule 23(a) prerequisites—numerosity, commonality, typicality, and adequacy of representation—were satisfied. Id. at 17. The court concluded that the class was "most appropriately certified under Rule 23(b)(2)." Id. at 25. Certification of a class action under that provision is proper only if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

The district court determined that Blue Cross had acted on grounds generally applicable to the class by "uniformly appl[ying] deductibles to PPO services despite plan language indicating that no deductible was required." Order at 26. The court also determined that the relief sought—(1) a declaration of rights, (2) injunctive and equitable relief, (3) disgorgement, (4) interest and lost earnings, and (5) restitution—would be appropriate for all class members if Heffner succeeded on the merits. Id. at 27. The court rejected Blue Cross' contention that the plaintiffs sought predominantly monetary relief, finding instead that the "character of the relief" was still injunctive. Id. at 27–28. In a footnote, the court indicated "that certification under Rule 23(b)(1)(A) & (B) along with Rule 23(b)(3) would also be appropriate . . . ." Id. at 25 n.7.

10

We granted Blue Cross' Rule 23(f) petition for permission to appeal the class certification order. Thereafter, the district court denied Blue Cross' motion to stay the proceedings in the district court pending this appeal.

## II.

We review the district court's class certification order only for abuse of discretion. Cooper v. Southern Co., 390 F.3d 695, 711 (11th Cir. 2004). "'As long as the district court's reasoning stays within the parameters of Rule 23's requirements for the certification of a class, the district court decision will not be disturbed.'" Id. (quoting Hines v. Widnall, 334 F.3d 1253, 1255 (11th Cir. 2003) (citations omitted)). However, "an abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or makes findings of fact that are clearly erroneous." Birmingham Steel Corp. v. TVA, 353 F.3d 1331, 1335 (11th Cir. 2003) (citation, quotation marks, and alterations omitted).

## III.

We will begin our analysis of the class certification issue with an assessment of the plaintiffs' claims in light of the "carefully crafted and detailed enforcement scheme" created by ERISA § 502(a), 29 U.S.C. § 1132(a). See Mertens v. Hewitt

Assocs., 508 U.S. 248, 254, 113 S. Ct. 2063, 2067 (1993).  This approach is appropriate because of the "'comprehensive and reticulated'" nature of ERISA, id. at 251, 113 S. Ct at 2066 (quoting Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 361, 100 S. Ct. 1723, 1726 (1980)), and the significant Supreme Court caselaw, discussed in relevant detail below, describing the nature of relief available under the various provisions of ERISA § 502(a).

In conducting our analysis, we are mindful that while a court should not determine the merits of a claim at the class certification stage, it is appropriate to "consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied."  Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1188 n.15 (11th Cir. 2003); see also Telfair v. First Union Mortgage Corp., 216 F.3d 1333, 1343 (11th Cir. 2000) ("It was within the court's discretion to consider the merits of the claims before their amenability to class certification.") (citations omitted).

A.

The plaintiffs' first claim seeks to enforce their rights under their respective plans where the SPDs produced by Blue Cross stated that the calendar year deductible was "no deductible."  The plaintiffs seek two remedies with this claim: (1) a declaration that Blue Cross was required to determine claims under these

12

plans "without the calculation or assessment of a calendar year deductible"; and (2) "injunctive and equitable relief" requiring Blue Cross "to re-calculate and remove all deductibles which were assessed . . . or imposed" in contravention of the "no deductible" language of the SPDs. Complaint at 15.

ERISA § 502(a)(1)(B) states that a plan participant or beneficiary may bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has explained that there are three distinct remedies available to a participant or beneficiary under § 502(a)(1)(B): "an action . . . [1] to recover accrued benefits, [2] to obtain a declaratory judgment that she is entitled to benefits under the provisions of the plan contract, and [3] to enjoin the plan administrator from improperly refusing to pay benefits in the future." Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 147, 105 S. Ct. 3085, 3092 (1985); see also Jones v. Am. Gen. Life and Accident Ins. Co., 370 F.3d 1065, 1069 (11th Cir. 2004).

We construe plaintiffs' first claim as arising under § 502(a)(1)(B) because the nature of the claim and the remedies sought with it fall within the scope of relief authorized by that ERISA provision. One wrinkle, of course, is that § 502(a)(1)(B) speaks about "benefits," not deductibles, and the first claim is about

13

deductibles or the lack of them. Unlike most ERISA cases where the plaintiff seeks an order requiring the plan to provide a more traditional benefit such as covering a health care cost at all, the plaintiffs here seek to remedy the imposition of a deductible which they contend is contrary to their plans. This difference does not affect our conclusion that the claim falls under § 502(a)(1)(B), however, because that ERISA provision specifically authorizes an action "to enforce . . . rights under the terms of the plan" and the deductible provision at issue in this case is a plan term. A statement that there will be no deductible is a right under the plan.

Not only that, but the existence and amount of a plan's deductible directly affects the value of benefits offered under the plan. All other things being equal, imposing a deductible decreases the value of the plan's benefits, and the value of those benefits varies inversely with the amount of the deductible. Viewed in these real economic terms, not having to pay a deductible is a benefit of a plan. An action to recover overstated deductibles, to enforce a "no deductible" provision of a plan, or to enjoin the imposition of deductibles that are not authorized by the plan is just as properly brought under ERISA § 502(a)(1)(B) as is an action to recover a benefit, to enforce a benefit provision, or to enjoin the nonpayment of benefits. See Forsyth v. Humana, Inc., 114 F.3d 1467, 1474–75 (9th Cir. 1997) (affirming

14

summary judgment for plaintiffs seeking recovery of portion of copayment under ERISA § 502(a)(1)(B)); Magliulo v. Metro. Life Ins. Co., 208 F.R.D. 55, 57–58 (S.D.N.Y. 2002) (holding that a lower insurance premium is a benefit of an insurance plan because "the benefit due from plaintiff's insurance plan is to receive health coverage for a certain price").

B.

Plaintiffs' second pleaded claim seeks relief for Blue Cross' breach of its fiduciary duties. As part of this claim, the plaintiffs allege that Blue Cross improperly "favored itself at the expense of its participants and beneficiaries" by imposing the deductibles in contravention of the SPD language. Complaint at 16. With this claim the plaintiffs seek "appropriate equitable relief," including disgorgement of Blue Cross' profits "from its improper administration of calendar year . . . deductibles," "restitution of the amounts overpaid to the providers by the participants and beneficiaries," and unspecified "other relief . . . requiring [Blue Cross] to remedy its wrongs . . . ." Id. at 17.

ERISA § 409(a) imposes personal liability on fiduciaries for breaching their fiduciary duties. 29 U.S.C. § 1109(a). ERISA § 502(a)(2) authorizes a plan participant or beneficiary to seek "appropriate relief" to enforce § 409. Id. § 1132(a)(2). The Supreme Court has explicitly stated that the relief available under

15

§ 409 can only be obtained on behalf of "the plan itself." Russell, 473 U.S. at 144, 105 S. Ct. at 3091.

In certain circumstances, however, relief to individual plan members or beneficiaries for a breach of fiduciary duty may be available under ERISA § 502(a)(3). Varity Corp. v. Howe, 516 U.S. 489, 507–15, 116 S. Ct. 1065, 1075–79 (1996). That provision allows a plan participant or beneficiary to bring suit: "(A) to enjoin any act or practice which violates any provision of this subchapter [of ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter [of ERISA] or the terms of the plan." ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). In its Varity decision the Supreme Court explained that § 502(a)(3) is a kind of "catchall" provision that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." 516 U.S. at 512, 116 S. Ct. at 1078. "[W]here Congress elsewhere provided adequate relief [in ERISA] for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" Id. at 515, 116 S. Ct. at 1079.

We construe plaintiffs' second claim seeking individualized relief for Blue Cross' breach of fiduciary duties as arising under ERISA § 502(a)(3). The

16

plaintiffs allege that Blue Cross breached its fiduciary duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) by imposing calendar year deductibles where the SPDs stated that no deductible was necessary. The plaintiffs also seek relief on behalf of all participants and beneficiaries, rather than on behalf of the plans themselves. As we have already explained, individualized relief for a fiduciary's breach of its duties is available under § 502(a)(3); it is not available under § 502(a)(2).

C.

We note that as part of their second claim the plaintiffs also allege that Blue Cross' employee bonus program created conflicts of interest between its employees and plan participants and "may have caused its employees . . . to engage in prohibited transactions, in violation of [ERISA § 406(b)(3),] 29 U.S.C. § 1106(b)(3)." Complaint at 16. ERISA § 406(b)(3) prohibits a fiduciary from "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b)(3). This is part of the fiduciary duties ERISA imposes, and the breach of those duties triggers ERISA § 409(a)'s imposition of personal liability on the fiduciary. Id. § 1109(a). As we have said, ERISA § 502(a)(2) authorizes a plan participant or beneficiary to bring an action to enforce § 409, id.

17

§ 1132(a)(2), but relief can be obtained only on behalf of the plan.  Russell, 473

U.S. at 144, 105 S. Ct. at 3091.  Accordingly, to the extent that the plaintiffs'

second claim seeks relief for the plans themselves, that claim arises under ERISA §

502(a)(2).

**IV.**

Without addressing the plaintiffs' ERISA claims separately, the district court

certified this class action under Rule 23(b)(2).  Certification under that rule is

proper where "the party opposing the class has acted or refused to act on grounds

generally applicable to the class" and "final injunctive relief or corresponding

declaratory relief with respect to the class as a whole" is "appropriate."  Fed. R.

Civ. P. 23(b)(2).

A.

At first blush, plaintiffs' claims to recover their deductibles and to obtain

other equitable relief seem to fit neatly into the Rule 23(b)(2) paradigm.  The

plaintiffs have alleged that the "no deductible" language made its way into the

SPDs of hundreds of Blue Cross-administered plans covering as many as 240,000

individuals.  Blue Cross has more or less admitted that this is true, although it has

not said exactly how many SPDs contained the language or how many plans

actually gave their participants the SPDs with that language.  Blue Cross does not

18

deny imposing calendar year deductibles on all plan participants without regard to the language of the SPDs. Accordingly, Blue Cross has acted "on grounds generally applicable to the class."

The plaintiffs have also requested relief that is appropriately awarded in Rule 23(b)(2) class actions. They seek both a declaration that Blue Cross should not have imposed the calendar year deductibles and an injunction requiring Blue Cross "to re-calculate and remove" the deductibles. They also seek other equitable relief including disgorgement of Blue Cross' profits from the deductibles it imposed and restitution of the amounts overpaid by them, monetary relief which they claim would flow directly from the other declaratory and injunctive relief. That relief might not preclude certification under Rule 23(b)(2), although it likely would be a close call. See Murray v. Auslander, 244 F.3d 807, 812 (11th Cir. 2001) ("Monetary relief may be obtained in a Rule 23(b)(2) class action so long as the predominant relief sought is injunctive or declaratory.") (citing Allison v. Citgo Petroleum Corp., 151 F.3d 402, 411 (5th Cir. 1998)).

Based on just this analysis, we would leave the class certification order undisturbed. However, we have to go further because reliance is a critical element of the plaintiffs' case, and it renders certification under Rule 23(b)(2) inappropriate. This Court has repeatedly held that in order "to prevent an employer

19

from enforcing the terms of a plan that are inconsistent with those of the plan summary, a beneficiary must prove reliance on the summary." Branch v. G. Bernd Co., 955 F.2d 1574, 1579 (11th Cir. 1992) (holding that a mandatory minimum 60-day COBRA election period specified in the employer's plan controlled where the employee did not rely on the 31-day election period as provided in the SPD); accord Liberty Life Assurance Co. of Boston v. Kennedy, 358 F.3d 1295, 1302 (11th Cir. 2004) (quoting Branch but holding that reliance was not at issue because there was no conflict between the plan and the SPD); Collins v. Am. Cast Iron Pipe Co., 105 F.3d 1368, 1371 (11th Cir. 1997) (quoting Branch and holding that plaintiff was bound by plan's language because he did not read the SPD). See also Buce v. Allianz Life Ins. Co., 247 F.3d 1133, 1155–56 (11th Cir. 2001) (Carnes, J., concurring in the result) (explaining that "when a plan and its summary description conflict, and the employee or beneficiary demonstrates the requisite reliance, the terms of that description determine her eligibility for benefits"); McKnight v. So. Life and Health Ins. Co., 758 F.2d 1566, 1570 (11th Cir. 1985) (finding that in the event of a conflict, the terms of the SPD should prevail over the plan because otherwise "[u]nfairness will flow to the employee for reasonably relying on the summary booklet").

The district court, in discussing Rule 23(a), considered the reliance problem but reasoned that it was not an obstacle to class certification:

> [Heffner's] recovery of benefits claim does not rest on a theory of inconsistent plan documents, plan terms, or ambiguities. Instead, [Heffner] argues that the language in his 1998 and 1999 plans regarding deductibles for PPO services was unambiguous and that [Blue Cross] failed to adhere to this clear language. In other words, the instant case is an action to enforce the plan provisions as written and for Plaintiff to succeed on this claim, individual participant interpretation and reliance does not necessarily need to be proven.

Order at 21. This reasoning is flawed. It ignores Blue Cross' position, which is not refuted by the plaintiffs, that formal ERISA plan documents other than the SPDs show that none of the plans insured or administered by Blue Cross provided deductible-free coverage. If that position is correct, under our Branch decision, each plaintiff would have to prove reliance on his SPD's "no deductible" term in order to prevent Blue Cross from enforcing a calendar year deductible provision contained in other plan documents. See 955 F.2d at 1579.

The district court agreed with the plaintiffs that the SPD and "the plan" are one and the same. That much is clear from the district court's amendment of the proposed class definition, limiting it to only "those participants and beneficiaries whose SPDs contain language defining the summary plan description as the plan." Order at 22. An examination of several ERISA sections, however, reveals that the

21

summary plan description is not the sum total of an ERISA plan. For instance, ERISA § 102(a), which requires that a plan administrator provide each plan participant and beneficiary with "[a] summary plan description of any employee benefit plan," indicates that an SPD is derived from an employee benefit plan, not that it is the plan. 29 U.S.C. § 1022(a). Moreover, ERISA § 402(b) mandates that each ERISA-governed plan must provide information about the plan's financial and administrative procedures, including procedures for amending the plan; however, ERISA § 102(b), which sets forth specific SPD requirements, does not require that SPDs contain any information about plan amendment procedures. Compare 29 U.S.C. § 1102(b)(1)–(4) with 29 U.S.C. § 1022(b).

Other ERISA provisions also show that the SPD is not the only ERISA plan document that counts. For example, ERISA § 404(a), which sets forth fiduciary duties, mandates that an ERISA fiduciary must administer any plan "in accordance with the documents and instruments governing the plan . . . ." Id. § 1104(a)(1)(D) (emphasis added). ERISA § 104(b)(2) requires the plan administrator to make "the bargaining agreement, trust agreement, contract, or other instruments under which the plan was established or is operated" available to plan participants and beneficiaries. Id. § 1024(b)(2). These provisions clearly contemplate that there are documents other than the SPD which control the operation of the plan.

In short, the SPD does not necessarily contain all of the information about a plan, and the plan is governed by documents other than the SPD. As the term "summary plan description" suggests, the SPD is a document that describes, in summary fashion, the relevant features of an employee benefit plan. This does not mean that the SPD is unimportant. As this Court has acknowledged, the SPD is a critical feature of the ERISA regulatory scheme because it "simplif[ies] and explain[s] a voluminous and complex document" to plan participants and beneficiaries. See McKnight, 758 F.2d at 1570. And where a plan participant or beneficiary relies on a provision in the SPD that conflicts with the plan, he or she may enforce the terms of the SPD over the terms of the plan.

B.

The plaintiffs do not take issue with these general propositions. Instead, they contend that because each Blue Cross SPD defined itself as "the plan," it was the plan, and the district court is not required to determine whether the calendar year deductible provisions in the SPDs conflicted with provisions in the other plan documents. Therefore, in the plaintiffs' view, they may enforce the "no deductible" language in the SPDs regardless of whether they individually relied on that language.

23

The plaintiffs rely on Alday v. Container Corp. of America, 906 F.2d 660 (11th Cir. 1990), to support their position. In that case, the plaintiff challenged his former employer's modification of the benefits and premiums of its retiree medical insurance plan in which the plaintiff participated. 906 F.2d at 662. The district court granted summary judgment to the defendants, id., apparently because the SPD provided that the employer could terminate or modify the plan. Id. at 665. On appeal, the plaintiff contended that, in addition to the formal plan documents, the district court should have considered communications between the employer and its employees which failed to state that the employer reserved the right to modify the plan. Id. These communications were not formal plan documents. Id. at 665–66.

In rejecting the plaintiff's argument in Alday, we held that because the SPD in that case "clearly functioned as the plan document required by ERISA" and unambiguously conferred on the employer the right to modify the plan, the other communications should be ignored. Id. at 666. This was an extension of the rule we had announced in Nachwalter v. Christie, 805 F.2d 956 (11th Cir. 1986), that oral representations cannot modify unambiguous terms of an employee benefit plan. See Alday, 906 F.2d at 665.

The plaintiffs in the present case assert that each Blue Cross SPD functions as "the plan" and unambiguously states that there is no calendar year deductible. Therefore, they contend, under Alday it is not necessary to refer to other "communications" in order to determine what each plan provides as its calendar year deductible. Because, in their view, other plan documents are not relevant to whether the plan participants and beneficiaries were required to pay a calendar year deductible, they should not be required to show reliance on the SPD in this case.

The defect in the plaintiffs' reasoning is that the other documents that Blue Cross asserts should be considered are not just "communications" between Blue Cross and the plan sponsors, participants, or beneficiaries, which is all that was involved in the Alday and Nachwalter cases. The other documents at issue in this case—the group health plan applications accepted by Blue Cross—are formal plan documents that, as we have explained, ERISA expressly provides may govern the administration of employee benefit plans. Alday does not preclude consideration of other plan documents where there is an unambiguous SPD. The holdings of Nachwalter and Alday merely prohibit courts from considering communications or documents that are not formally sanctioned by ERISA where there is an unambiguous SPD. That is not what we have in this case.

25

In support of their position that the SPD is the plan and therefore they are not required to prove reliance on the no deductible term in the SPD, the plaintiffs point to two statements in the Funding Plus SPD that equate the SPD and the plan. First, the introductory paragraph states: "This booklet is a 'summary plan description' or 'plan' as defined by ERISA." Second, the SPD defines "Plan" as: "This Summary Plan Description describing the benefits of your Employee's Health Benefits Plan." However, we are not convinced that those statements are to be taken as literally as the plaintiffs wish. A more logical understanding of them is that they are merely shorthand explanations of ERISA terms meant to be understood by plan participants and beneficiaries.

In any event, neither of these statements precludes consideration of other plan documents in determining whether the plans required participants and beneficiaries to pay calendar year deductibles. The Funding Plus SPD itself provides that there are documents other than the SPD that affect the plan's coverage. For instance, it states that: "The Plan provides hospital and medical benefits as administered under a contract by Blue Cross and Blue Shield of Alabama . . . ." The SPD defines "Contract" as "[t]he Group Health Benefits contract between your Group and Blue Cross and Blue Shield of Alabama" and explains that "[t]he contract is made up of (1) your Group's Group Application for

26

the contract; (2) this Summary Plan Description; and (3) any written change to this Summary Plan Description."

Read together, these SPD provisions apprise participants and beneficiaries that in order to be fully aware of their plan's coverage, they must refer to the contract, which includes both the group health plan application and the SPD. A contract between a group and an insurer such as Blue Cross is specifically listed as an ERISA document which may control a plan's operation. See 29 U.S.C. § 1024(b)(2) ("the bargaining agreement, trust agreement, contract, or other instruments under which the plan was established or is operated") (emphasis added). As such, it may not be wholly disregarded.

The district court erred by refusing to consider the deductible provisions of other plan documents such as the group health plan applications before determining whether the claims asserted by Heffner were proper for class treatment. If, as Blue Cross contends, those documents provide for calendar year deductibles greater than zero and thereby conflict with the SPDs, each plaintiff in this class action must prove reliance on the "no deductible" language of the calendar year deductible provision in his or her plan's SPD.

## C.

Our conclusion that each class member in the present case must prove reliance on the SPD's calendar year deductible provision if it conflicts with the same provision in the other plan documents is not undermined by the fact that the class complaint pleads claims arising under both ERISA §§ 502(a)(1)(B) and 502(a)(3). Branch, the case in which we adopted the reliance requirement, involved an ERISA action to recover health insurance benefits, but we did not specify which remedial provision was at issue. See 955 F.2d at 1576–77. Moreover, our holding was that in order "to prevent an employer from enforcing the terms of a plan that are inconsistent with those of the plan summary, a beneficiary must prove reliance on the summary." Id. at 1579. In the present case, Blue Cross seeks to enforce the plan terms contained in the group health plan applications. To prevent it from doing that and to obtain relief under either § 502(a)(1)(B) or 502(a)(3), the plaintiffs must prove reliance on the SPDs.

Besides, the underlying factual allegations are the same for both claims: Blue Cross issued SPDs stating there was no calendar year deductible but then imposed those deductibles anyway. In these circumstances, we see no reason why the plaintiffs should not be required to prove reliance on the SPD in order to obtain the relief they seek under both § 502(a)(1)(B) and § 502(a)(3). It would defeat the

28

purpose of having a reliance element in this type of case if the plaintiff could avoid it simply by pleading under an alternative ERISA provision.

**V.**

We turn now to the effect of our resolution of the reliance issue on the question of whether the district court properly certified the plaintiffs' ERISA claims under Rule 23(b)(2). There is little or no dispute that Blue Cross has acted "on grounds generally applicable to the class," so we focus our inquiry on the second part of the rule, which is whether "final injunctive relief or corresponding declaratory relief with respect to the class as a whole" is appropriate. See Fed. R. Civ. P. 23(b)(2).

As we have just explained, in order to be entitled to relief each class member must prove that he relied on the no deductible term of his plan's SPD where the other plan documents do provide that there is a calendar year deductible. In a variety of contexts, we have held that the reliance element of a class claim presents problems of individualized proof that preclude class certification. See, e.g., Sikes v. Teleline, Inc., 281 F.3d 1350, 1361–63 (11th Cir. 2002) (reversing Rule 23(b)(3) class certification of civil RICO claim in part because the district court erred in presuming reliance); Andrews v. Am. Tel. & Tel. Co., 95 F.3d 1014, 1023–24 (11th Cir. 1996) (reversing certification of Rule 23(b)(3) class action asserting mail

29

and wire fraud claims on grounds of unmanageability in part because each plaintiff would be required to prove reliance which meant that the claims were "not wholly subject to class-wide resolution"); Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 457 (11th Cir. 1996) (affirming denial of class certification based on lack of commonality prerequisite of Rule 23(a)(2) because reliance element of ERISA claims was "not susceptible to class-wide proof"). Although this Court has not determined that individual reliance issues weigh against Rule 23(b)(2) certification, the Fifth Circuit has. See Bolin v. Sears, Roebuck & Co., 231 F.3d 970, 978 (5th Cir. 2000) (concluding that "individual findings of reliance necessary to establish RICO liability and damages preclude . . . (b)(2) certification"). We agree with the Bolin decision.

Even if Heffner proves that he purchased prescription drugs in reliance on the Funding Plus SPD's calendar year deductible provision, only he will be entitled to relief on that proof. Other class members will not. "[F]inal injunctive relief or corresponding declaratory relief with respect to the class as a whole" would not be warranted. See Fed. R. Civ. P. 23(b)(2); see also Jones v. Am. Gen. Life & Accident Ins. Co., 213 F.R.D. 689, 702 (S.D. Ga. 2002) (refusing to certify class under Rule 23(b)(2) "[b]ecause each individual's reliance would be in question"

and "there would be no way to say with any certainty that the same relief would be appropriate for all class members").

As we have explained, "the claims contemplated in a (b)(2) action are <u>class</u> claims, claims resting on the same grounds and applying more or less equally to all members of the class." <u>Holmes v. Continental Can Co.</u>, 706 F.2d 1144, 1155 (11th Cir. 1983). Moreover, the forms of relief available in Rule 23(b)(2) class actions are in the nature of group remedies that benefit the entire class. <u>See</u> <u>Cooper</u>, 390 F.3d at 720 ("the basic premise of . . . a [Rule 23(b)(2)] class action [is] that class members suffer a common injury properly addressed by class-wide equitable relief"); <u>Murray</u>, 244 F.3d at 812 (vacating Rule 23(b)(2) class certification because plaintiffs' claim for compensatory damages predominated over class's claim for equitable relief where plaintiffs "[did] not seek damages as a group remedy" but "[i]nstead . . . [sought] damages as a remedy for their alleged individual pain and suffering") (quotation marks and citations omitted); <u>Holmes</u>, 706 F.2d at 1155 n.8 ("Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries.") (quotation marks and citation omitted). Certification under Rule 23(b)(2) is proper when the relief sought necessarily affects all class members. <u>See</u> <u>Holmes</u>, 706 F.2d at 1157.

Success by the class representative in this case, however, will not result in relief to other class members. That is because, in order to be entitled to the relief that the class seeks, each plaintiff must prove reliance on the SPD of his or her plan. Injunctive or declaratory relief, and any other equitable relief based on it, will not automatically flow to the class "as a whole" even if Heffner succeeds in proving reliance on his SPD. Accordingly, we hold that it was abuse of discretion to certify under Rule 23(b)(2) the plaintiffs' ERISA claims seeking individualized relief for Blue Cross' imposition of the calendar year deductibles. Cf. In re Elec. Data Sys. Corp. "ERISA" Litig., 224 F.R.D. 613, 629 (E.D. Tex. 2004) (certifying ERISA breach of fiduciary duty class action brought on the plan's behalf under Rule 23(b)(2) because "monetary relief will go to the Plan itself" and "is in the nature of a group remedy").

## VI.

The plaintiffs also claim that Blue Cross violated ERISA § 406(b)(3) through the operation of its employee bonus program. We construe that claim as alleging a breach of fiduciary duty under ERISA § 409. See 29 U.S.C. § 1109. As we have already mentioned, § 502(a)(2) authorizes plan participants or beneficiaries to bring an action to enforce § 409, id. § 1132(a)(2), but they can only

32

obtain relief on behalf of the plan itself. Russell, 473 U.S. at 144, 105 S. Ct. at 3091.

The district court did not mention, much less discuss, this aspect of the plaintiffs' case in its certification order. Because "we are unable to review class certification decisions before they are made," we must remand the case to the district court for consideration of this issue. See Martinez-Mendoza v. Champion Int'l Corp., 340 F.3d 1200, 1216 (11th Cir. 2003); see also Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir. 1987) (district court abused its discretion by failing to address separately class claims under different securities law provisions).

## VII.

Lastly, we address this two-sentence statement of the district court in a footnote of its order: "As the Court finds that certification is proper under Rule 23(b)(2), it is unnecessary to discuss certification under Rule 23(b)(1) and Rule 23(b)(3). However, the Court does note that certification under Rule 23(b)(1)(A) & (B) along with Rule 23(b)(3) would also be appropriate in the instant case." Order at 25 n.7. That conclusive assertion, an aside really, provides us with no meaningful basis on which to review the alternative grounds of certification, if that is what the court did intend, and we will not perform the required analysis in the

33

first instance.  See Murray, 244 F.3d at 813 (refusing to consider whether class should be certified under Rule 23(b)(3) where the district court had made no findings on that issue); see also Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1288 (11th Cir. 2001) (stating that whether a putative class representative "would meet the prerequisites of Rule 23(a), and one of the subdivisions of Rule 23(b), is a question for the district court to address in the first instance, not this Court").  Instead, the proper action for us to take is to remand so that the district court can explicitly perform the analysis.  Cf. In re Corrugated Container Antitrust Litig., 643 F.2d 195, 212 (5th Cir. 1981) (remanding for further analysis district court's approval of class action settlement and stating that "the district court judge must undertake an analysis of the facts and the law relevant to the proposed compromise, and he must support his conclusions by memorandum") (citation and quotation marks omitted).

In taking this action, we express no opinion as to whether this class is properly certifiable under Rule 23(b)(1)(A), Rule 23(b)(1)(B), or Rule 23(b)(3). We conclude only that it cannot be certified on those grounds without more analysis and justification.

## VIII.

The District Court's order certifying the plaintiff class is VACATED, and the case is REMANDED to the District Court for further proceedings consistent with this opinion.