[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 27, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-17189
Non-Argument Calendar
_____

D. C. Docket No. 04-00941-CV-J-99-MCR

DAVID MERRITT,

Plaintiff-Appellant,

versus

FEDERAL EXPRESS CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 27, 2006)**

Before ANDERSON, BIRCH and HULL, Circuit Judges.

PER CURIAM:

David Merritt appeals the district court's order granting summary judgment

in favor of Federal Express Corporation ("FedEx") on his claim alleging improper

denial of severance benefits under a severance pay plan,[1] in violation of the

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.

After review, we reverse and remand.

## I. BACKGROUND

A.    August 2003 Plan

Merritt was an employee of FedEx. FedEx established a Voluntary

Severance Incentives Plan (the "Plan") to provide, among other things, financial

benefits to eligible employees who voluntarily terminated their employment with

FedEx pursuant to the Plan. By its terms, the Plan was effective on August 1,

2003. Eligible employees, of which Merritt was one, could "elect to sever their

employment relationship and receive the benefits described herein if their

termination occurs no later than November 30, 2003, except as provided in Section

3(h) herein." Section 3(h) of the Plan provided that the eligibility period was

August 1 through November 30, 2003 and that "[t]he date of an Eligible

Employee's severance/termination may be delayed up to May 31, 2004, as

determined by management for business reasons[.]" Other provisions of the Plan

stated that an employee's election to sever his employment and receive benefits

_____

[1]A severance pay plan is an "employee welfare benefit plan" as defined under ERISA.
See Adams v. Thiokol Corp., 231 F.3d 837, 840 n.4 (11th Cir. 2000).

2

could be rejected if FedEx exceeded its goal for voluntary retirements or terminations by eligible employees. The Plan also granted FedEx the "sole and absolute discretion to interpret where necessary all provisions of the Plan . . . ."

Merritt requested a Plan packet on August 29, 2003. The packet contained a copy of the Plan, a Summary Plan Description ("SPD"), and a VSI General Release and Waiver Agreement ("Agreement") for accepting voluntary severance under the Plan. The SPD referenced the General Release and Waiver Agreement that accompanied the SPD and instructed employees to sign and return the Agreement by November 24, 2003 if they wished to accept the Plan. Apparently, FedEx selected the November 24 deadline for returning the Agreement so that an accepting employee's paperwork could be processed and his employment terminated by the November 30 deadline in the Plan. The SPD also stated that employees must "sign and have notarized the blue VSI General Release and Waiver included in this packet." Thus, the Plan documents here included the Plan, SPD, and the Agreement.

B.    September 2003

FedEx sent a Plan packet to Merritt on September 5, 2003. FedEx submitted proof by a FedEx tracking number to show that the Plan packet was delivered to Merritt's home at 1:42 p.m. on September 8, 2003. However, no one signed for the

3

delivery. As discussed later, Merritt argues that FedEx has submitted no proof that he personally received the packet.

Additionally, FedEx sent an email to FedEx employees on September 16, 2003 which reiterated the Plan deadlines, including the November 24, 2003 deadline for returning the Agreement and the November 30, 2003 deadline for termination to occur. Because Merritt was on a leave of absence at that time, FedEx sent a copy of the email to his home. FedEx submitted a FedEx tracking number showing that the email was delivered on September 19, 2003.

C.    November 2003

The problem in this case arises only because Merritt denies receiving the Plan packet in September 2003. Merritt submitted an affidavit stating that he received the Plan packet in November 2003. As noted earlier, the packet contained the Plan, the SPD, and the Agreement. Although the SPD states that employees must execute and return the Agreement by November 24, 2003, the Agreement in the packet stated that after receiving the Agreement employees had forty-five days to sign and accept the severance Agreement. Specifically, the Agreement contained the following provision:

> 11. RIGHT TO LEGAL COUNSEL: EMPLOYEE is advised to consult with an attorney before signing this Agreement. EMPLOYEE understands that s/he has forty-five (45) calendar days after receiving this Agreement (including the day of receipt) to consider and accept

4

> this Agreement by signing the Agreement and returning it to FEDEX. EMPLOYEE understands and agrees that material or immaterial changes requested or made to this Agreement during the 45-day period will not restart the running of the 45-day period. While this period of time is running, EMPLOYEE also understands that any internal charges or complaints s/he may have filed will be held in abeyance.

(Emphasis added). The Agreement also set out that the employee signing the Agreement, here Merritt, "has voluntarily decided to resign his/her employment effective November 30, 2003 (or later date if deferred by FEDEX) . . . ."

Merritt executed the Agreement on December 3, 2003, within forty-five days of his receiving the Agreement. FedEx received the executed Agreement on December 5, 2003. FedEx declined to accept or honor Merritt's Agreement and prohibited Merritt from receiving any severance benefits. FedEx emphasizes that Merritt did not execute and return the Agreement by November 24, 2003 as expressly advised in the SPD and September 19, 2003 email.

D.    Merritt's Administrative Appeal

Merritt appealed the denial to FedEx, the Plan administrator. FedEx determined that Merritt missed the deadline for accepting Plan benefits because he did not execute and return the Agreement until December 3, 2003. Based on its records indicating that Merritt received the packet containing the Agreement on September 8, 2003, FedEx did not find credible Merritt's claim that he did not

5

receive the Agreement until November 2003. FedEx did not address Merritt's reliance on the forty-five day period provided for in the Agreement.

## E.    District Court Order

Merritt filed this ERISA lawsuit. FedEx moved for summary judgment. In granting summary judgment, the district court found it unnecessary to resolve the issue of when Merritt received the Agreement because the district court agreed with FedEx's interpretation and decision that the Plan deadline for returning the Agreement was November 24, 2003 based on the inclusion of that date in the Summary Plan Description and September 19, 2003 email. The district court noted that even if Merritt did not receive the Plan packet until November 2003 and even if FedEx had construed the Plan in favor of Merritt's perceived deadline of forty-five days <u>after receipt of the Agreement</u>, FedEx's interpretation of the deadline as November 24, 2003 was not "wrong" or arbitrary and capricious. The district court concluded that FedEx's denial of Merritt's severance benefits was not "wrong" or arbitrary and capricious, that this conclusion ended the inquiry, and, thus, the district court granted summary judgment to FedEx. Merritt timely appealed.[2]

---

[2]We review a summary judgment ruling <u>de novo</u>,"view[ing] the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." <u>Burton v. City of Belle Glade</u>, 178 F.3d 1175, 1186-87 (11th Cir. 1999). A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions

## II. DISCUSSION

We have laid out a six-step path for review of ERISA plan benefit denials,

including those based on plan interpretations as well as on factual determinations:

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
> (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
> (3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
> (5) If there is no conflict, then end the inquiry and affirm the decision.
> (6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

Williams v. BellSouth Telecomm., Inc., 373 F.3d 1132, 1138 (11th Cir. 2004)

(footnotes omitted).  Under the first step, "'[w]rong' is the label used by our

precedent to describe the conclusion a court reaches when, after reviewing the plan

documents and disputed terms de novo, the court disagrees with the claims

administrator's plan interpretation."  HCA Health Servs. of Ga., Inc. v. Employers

---

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Health Ins. Co., 240 F.3d 982, 993 n.23 (11th Cir. 2001).

A.      Whether FedEx's Decision Was "Wrong"

Construing the evidence in Merritt's favor, the date Merritt received the Agreement presents an issue of fact. Whether this issue of fact is material and requires reversal of the entry of summary judgment depends on the remainder of the ERISA analysis. Accordingly, construing the evidence in favor of Merritt, we will assume that he received the Agreement in November 2003 and proceed to determine whether FedEx's decision was "wrong."[3]

The Agreement provided that Merritt had forty-five days after receipt to consider and accept the severance package. Assuming Merritt did not receive the Agreement until November 1, 2003, he executed the Agreement on December 3, 2003, less than forty-five days after receiving it. Therefore, under the terms of the Agreement, Merritt's execution was timely. However, under the terms of the Plan, SPD, and email, Merritt's execution of the Agreement on December 3 was not timely.

_____

[3]We recognize that FedEx has presented strong evidence that Merritt received the Plan packet on September 8, 2003, which contained (1) the Plan stating that termination had to occur by November 30, (2) the Agreement to accept voluntary severance, and (3) the SPD stating that the Agreement had to be returned by November 24. There is also evidence that Merritt received the September 2003 email containing the same deadlines. However, given Merritt's affidavit that he received the Plan packet in November 2003 and given the current summary judgment posture, we must view the evidence and factual inferences in favor of Merritt, the non-moving party. See Shaw v. Conn. Gen. Life Ins. Co., 353 F.3d 1276, 1282 (11th Cir. 2003).

Thus, if Merritt did not receive the packet until November 1, 2003, two interpretations of the deadline for returning the Agreement were possible: (1) November 24, 2003 or, at the latest, November 30, 2003, the date by which termination had to occur as described in the Plan, SPD, and email; or (2) forty-five days after Merritt's receipt of the Agreement in November 2003, as described in the Agreement. When an ERISA summary plan description conflicts with the plan itself, the summary plan description controls provided the employee has relied upon it. See Heffner v. Blue Cross & Blue Shield of Ala., Inc., 443 F.3d 1330, 1340 (11th Cir. 2006); McKnight v. S. Life & Health Ins. Co., 758 F.2d 1566, 1570 (11th Cir. 1985). Here, the Agreement was clearly a critical part of the Plan because it was the document that the employee was to sign to become a participant in the Plan and, by the language in the SPD, was effectively part of the SPD. Therefore, the principle in Heffner and McKnight applies here. In light of the conflicting deadlines and Merritt's reliance on the forty-five day deadline in the Agreement, the terms of the Agreement control. Therefore, if Merritt did not receive the Plan packet until November 2003, we conclude that FedEx's decision to construe the deadline as November 24 (or, at the latest, November 30 as set out in the Plan) was wrong.

On the other hand, if Merritt received the packet on September 8, 2003, as

9

FedEx claims, then there is no conflict between the Agreement and the other Plan documents, and FedEx's decision was not wrong. Upon receipt of the Plan documents on September 8, the forty-five days in the Agreement would have expired before the November 24 deadline for returning the Agreement or the November 30 deadline for termination of employment, and Merritt's execution of the Agreement on December 3 was untimely. Accordingly, we conclude that when Merritt received the Plan packet is a <u>material</u> issue of fact that controls whether FedEx's decision was wrong or not.

However, because we must view the evidence in Merritt's favor, FedEx's decision was wrong, and we must proceed to the next step of determining whether FedEx has discretion to interpret the Plan.

## B.    Discretion

We readily conclude that FedEx was vested with discretion under the Plan. Specifically, the Plan stated that FedEx had "sole and absolute discretion to interpret where necessary all provisions of the Plan . . . ." If FedEx had no discretion, then that would end the inquiry. But, because FedEx has discretion, we proceed to the next step: whether FedEx's wrong decision was reasonable.

## C.    Reasonableness of the Decision and Conflict of Interest

We ultimately need not decide the reasonableness issue because, even if

10

FedEx's decision was reasonable, FedEx loses at the next step: the conflict of interest stage. The Plan stated that FedEx "shall pay Severance Pay and provide any other Severance Benefits from its general assets." Thus, FedEx was both the claims administrator and payer of claims and operated under a conflict of interest. The decision of a plan administrator operating under a conflict of interest is subject to a heightened arbitrary and capricious review. See Williams, 373 F.3d at 1138. As part of this review, "[t]he administrator [must] prove[] that [its] plan interpretation was not tainted by self-interest." Id. "[I]f the administrator can demonstrate a routine practice or give other plausible justifications-such as benefitting the interests of other beneficiaries-judicial deference to it[s decision despite the conflict] may be granted . . . ." Id. On appeal, FedEx does not offer any argument to counter its self-interest, nor do we discern one.

Therefore, considering (1) FedEx's conflict of interest; (2) FedEx's burden to dispel any taint of self-interest; and (3) FedEx's failure to advance any argument in its appeal brief that its decision was not tainted by self-interest, FedEx's decision, even if reasonable, does not survive a heightened arbitrary and capricious review.

In sum, we conclude that the date Merritt received the Agreement presents an issue of material fact that controls whether FedEx's decision was wrong and

11

precludes entry of summary judgment. Once that fact issue is resolved, the district court may then properly apply the six-step analysis.

## III. CONCLUSION

For the above reasons, we reverse the district court's grant of summary judgment to FedEx and remand this case for further proceedings.[4]

**REVERSED AND REMANDED.**

---

[4]For the first time on appeal, Merritt advances a contractual argument in which he stresses that we should consider the Agreement alone as creating a contract between himself and FedEx. Because we must consider all ERISA plan documents together when reviewing an ERISA claim, we seriously question the validity of Merritt's separate contractual argument. In any event, we conclude that Merritt waived this argument by not raising it in the district court.