[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 3, 2005
THOMAS K. KAHN
CLERK

No. 04-12566

_____

D. C. Docket No. 03-01260-CV-T-24-MSS

CONTINENTAL INSURANCE COMPANY,

Plaintiff-Appellant,

versus

POLLY ROBERTS,
STEPHEN GIMOPOULOS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 3, 2005)

Before BIRCH, CARNES and HILL, Circuit Judges.

CARNES, Circuit Judge:

This appeal arises out of a disagreement about the meaning of a term in an insurance contract. As always in this type of case, "the pivotal issue is whether a policy term is ambiguous and therefore to be interpreted against the insurer, meaning that there is coverage, or is plain, meaning that there is no coverage." Am. Cas. Co. of Reading, Pa. v. Etowah Bank, 288 F.3d 1282, 1284 (11th Cir. 2002). The term in question is "household," as used to define "family member" in a limitation clause contained in an insurance policy on a boat.

In July of 2001 Stephen Gimopoulos suffered severe spinal injuries causing him to become quadriplegic after he dove headfirst off Polly Roberts' boat into shallow water. Following the accident, Gimopoulos filed a claim seeking to recover under Roberts' insurance policy, which had been issued by Continental Insurance Company. The policy had a liability provision, which provided $100,000.00 in coverage for bodily injuries arising out of operation of the boat. That coverage was limited, however, by another provision in the policy, which specified that "[b]oating liability coverage for any claim . . . by any family member(s) shall be limited to $25,000.00 per accident." The policy defined the term "family member" as "any member of the named insured's household." It did not define the term "household."

When Continental investigated Gimopoulos' claim, it discovered that for a period of twenty months leading up to the accident Gimopoulos and Roberts had been living together in an intimate relationship. Continental also found that they had shared meals and expenses, and that Roberts had allowed Gimopoulos to carry a cellular telephone and credit card in her name. Based on that information, Continental believed that Gimopoulos was a member of Roberts' household, which would mean that he was subject to the family member limitation clause of the insurance policy. Acting on its belief, Continental offered Gimopoulos $25,000.00. Believing differently, Gimopoulos did not accept Continental's offer.

In June of 2003 Continental filed the present lawsuit against Gimopoulos and Roberts in federal district court. Among other things, Continental sought a declaration that Gimopoulos was entitled to only $25,000.00 under the policy because he had been a member of Roberts' household at the time of the accident. Continental contended that the word "household," as used in the policy, included all people living together in one dwelling regardless of whether they were related by blood, marriage, or adoption. Because it was undisputed that Gimopoulos and Roberts lived together, Continental argued that Gimopoulos was a member of Roberts' household.

3

Gimopoulos and Roberts responded that the word "household," as used in the insurance contract, was limited to people sharing a dwelling who were also related by blood, marriage, or adoption. They argued that because Gimopoulos was not related to Roberts in any of those ways, he was not a member of her household and was, therefore, entitled to the full $100,000 coverage.

The parties presented their differences to the district court in cross-motions for summary judgment. The district court granted Gimopoulos and Roberts' motion and denied Continental's. The court explained that it did so because both interpretations of "household" were reasonable in light of the way dictionaries defined the term, because of what Florida case law said about the term, and because of the context in which the term was used in the insurance policy. There being two reasonable interpretations, the court concluded that the contract term was ambiguous and as a result had to be construed against Continental. On that basis, the court ruled that Gimopoulos was not a member of Roberts' household and thus was not her family member for purposes of the limitation clause. Following entry of final judgment, Continental filed this appeal challenging the district court's ruling on the cross-motions for summary judgment.

There is much about which the parties agree. They agree that Florida law governs the interpretation of the term "household" in this contract. See Wilburn

4

Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 320–21, 75 S. Ct. 368, 374 (1955) (while maritime insurance contracts are within the admiralty jurisdiction of the federal courts, state law will control in the absence of an admiralty rule). They agree that if the term "household" is ambiguous, the policy is to be construed against Continental, the insurer. See State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So. 2d 1245, 1248 (Fla. 1986) ("[E]xclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured, since it is the insurer who usually drafts the policy."). They agree that the term "household" is ambiguous if it is subject to two reasonable interpretations. See Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000) ("If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the another limiting coverage, the insurance policy is considered ambiguous."); Cont'l Cas. Co. v. Wendt, 205 F.3d 1258, 1261 (11th Cir. 2000) ("An insurance contract is deemed ambiguous if it is susceptible to two or more reasonable interpretations that can fairly be made." (quotation omitted)). And they agree that Continental's proffered interpretation of "household," which includes certain unrelated people who reside with the insured, is reasonable. Thus, the only question left for our review is whether the

interpretation of "household" offered by Gimopoulos and Roberts is also reasonable.  If so, they win; if not, they lose.

There are ample grounds for concluding that the interpretation of "household" offered by Gimopoulos and Roberts, which requires kinship by blood or marriage or adoption, is reasonable.  The most important indication of the reasonableness of that interpretation is the dicta in five Florida appellate court decisions stating that an essential characteristic of a household member is "close ties of kinship"—a relationship by blood, marriage, or adoption.  Dwelle v. State Farm Mut. Auto. Ins. Co., 839 So. 2d 897, 898–99 (Fla. 1st DCA 2003); Kepple v. AETNA Cas. & Sur. Co., 634 So. 2d 220, 221–22 (Fla. 2d DCA 1994); Universal Underwriters Ins. Co. v. Evans, 565 So. 2d 741, 742 (Fla. 5th DCA 1990); Row v. United Servs. Auto. Ass'n, 474 So. 2d 348, 349 (Fla. 1st DCA 1985); Gen. Guar. Ins. Co. v. Broxsie, 239 So. 2d 595, 597 (Fla. 1st DCA 1970); see also Black's Law Dictionary 393 (2d pocket ed. 1996) (defining kinship as a "[r]elationship by blood, marriage, or adoption").  While dicta cannot establish decisional law, it can serve to show the reasonableness of an interpretation.  Cf. McDonald's Corp. v. Robertson, 147 F.3d 1301, 1314–15 (Carnes, J., concurring specially) (while "dicta in our opinions is not binding on anyone for any purpose," it "can be used as a

6

vehicle for offering to the bench and bar . . . views on an issue"). Here it does exactly that.

Continental touts some other dicta or, more accurately, the implication of some dicta that is contained in the Fifth District Court of Appeals' Evans opinion. In that case the court determined that two unrelated roommates were not members of the same household for purposes of the insurance policy at issue. Evans, 565 So. 2d at 742–43. In so concluding, it noted the lack of any indication that the men had a relationship beyond being roommates or had any intention of forming "a social unit." Id. at 743. The court, however, did not say that the existence of such a relationship or intention would have been enough to form a household. See id. ("Whatever else the word 'household' may suggest, we have no difficulty holding that it does not encompass landlord-tenant or simple roommate arrangements.").

Moreover, even if some statements in the Evans opinion imply that relationships based on something less than blood, marriage, or adoption might suffice to constitute a household, that implication is outweighed by another, more explicit statement in the same opinion. The Evans opinion states that court's view that the First District Court of Appeal had "said it best" when it said, among other things, that: "all members of the household have ties of blood, marriage or adoption among themselves. [M]erely dwelling under the same roof does not

7

constitute them members of the same household, but such is the result when they share common bonds of kinship . . . ." Broxsie, 239 So. 2d at 597, quoted in Evans, 565 So. 2d at 742. Besides, even if the Evans opinion is to be chalked up as an indication in favor of Continental's position, there are still the four other opinions of Florida appellate courts containing statements counting in favor of the position of Gimopoulos and Roberts. All they have to show is that their position is reasonable, and a net difference of three court of appeals opinions in their favor is enough to do that.

If more were needed, and we doubt that it is, dictionaries indicate that Gimopoulos and Roberts' definition of the word "household" is an accepted one. See, e.g., Black's Law Dictionary 325 (2d pocket ed. 1996) ("1. A family living together."); The Random House Unabridged Dictionary 927 (2d ed. 1993) ("1. the people of a house collectively; a family including its servants"); Webster's Third New International Dictionary Unabridged 1097 (1986) ("2: those who dwell under the same roof and compose a family."); see also Black's Law Dictionary 273 (2d pocket ed. 1996) (defining a "family" as "1. A group of persons connected by blood, by affinity, or by law . . . .").

Gimopoulos and Roberts do not need to show that their interpretation of the term "household" in this insurance contract is the correct one. All they need to

show is that the term is ambiguous, and the existence of two competing, reasonable interpretations establishes ambiguity. See Doe v. Bush, 261 F.3d 1037, 1062 (11th Cir. 2001) ("We need not choose between the competing interpretations of the final judgment. It is enough that there are two reasonable, competing interpretations, which is the very definition of ambiguity."). Because the interpretation of "household" offered by Gimopoulos and Roberts is reasonable, they have made a sufficient showing of ambiguity. They are thus entitled to the benefit of the undisputed Florida legal principle that an ambiguous insurance contract is construed against the insurer. See Pridgen, 498 So. 2d at 1248.

Continental wants us to certify to the Florida Supreme Court the question of what "household" means under Florida law in general, or as used in this insurance policy in particular. We do like the certification procedure and utilize it more than any other circuit, Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 116 F.3d 1406, 1413 (11th Cir. 1997), but this is not a good case for it. While the Florida Supreme Court could authoritatively establish the true meaning of the term "household" under Florida law, that is not the question on which this appeal turns. For example, if we certified the question of what "household" means in this context, and the Florida Supreme Court answered that the term is broad enough to encompass relationships beyond those established by blood, marriage, or adoption,

9

that answer would authoritatively establish the definition of the term and dispel any ambiguity in the future. The Florida Supreme Court's answer to that question would not, however, tell us whether interpreting the term "household" differently before that decision was reasonable; we still would not know whether the term had been ambiguous before the Florida Supreme Court spoke. The question is not what the term truly means but whether there was enough doubt about its true meaning to bring into play the principle that where there is ambiguity the insured wins.

Of course, we could certify the question of whether the term "household" was sufficiently ambiguous for Gimopoulos and Roberts to win, but that seems to be a less significant issue of state law, and one that is less subject to debate. For the reasons we have given, we think it clear that the meaning of the term "household" is sufficiently unclear for the ambiguity principle to apply. We don't need to impose on the Florida Supreme Court's time with that question.

AFFIRMED.

HILL, Circuit Judge, dissenting:

Here it appears that Mr. Gimopoulos and Ms. Roberts have successfully attached more importance to a single piece of paper – a marriage

10

license – than they have ever before.  For quite some time they have dwelt under the same roof.  They have bedded down together in the same bed.  They have entertained their mutual friends in the same dwelling.

Neither has another house or home.  Neither has another house mate, roommate or bed mate.  Neither do they have a marriage license.

The couple apparently felt that they did not need this single piece of paper in order to enjoy all the bliss of conjugal life.  Nevertheless, they earnestly maintain that a marriage license *vel non* is now of great significance to the Continental Insurance Company.

The couple obtained legal counsel so that Mr. Gimopoulos could sue Ms. Roberts.  Counsel for Ms. Roberts advised her to confess judgment in that action.  In essence they undertake to "litigate by day and copulate by night, *inter sese* and *pendente lite*."  *See Holt v. Holt*, 77 F.2d 538, 540 (App. D.C. Ct. 1935).

In 1891, Chief Justice Logan Bleckley of the Georgia Supreme Court had for resolution before him what was then, a thorny problem, one hard to clearly  "pin down."  As he began this difficult section of his opinion, he wrote: "When the right point of view is discovered, the problem is more than

half solved." *Ellison v. Georgia R.R. & Banking Co.*, 13 S.E. 809, 813 (Ga. 1891).

To discover the right point of view in this case we begin with the purpose of the limitation clause in the Continental policy. It intends to discourage collusive claims by persons in a close relationship with the insured. It limits coverage for any claim against the insured by any "family member." The policy defines "family member" as "any member of the named insured's household."

Our panel complains that "household" is not sufficiently defined by Continental. So, in a burst of insurance policy draftsmanship, we undertake to define the term for the company.

Borrowing from some dicta picked up and repeated in a couple of Florida district court of appeals cases, we announce that "household" may be ambiguous. Our panel majority opines that it could be limited to people sharing a dwelling - but its possible that these individuals must also be related by blood, marriage or adoption.

The majority accepts Continental's assertion that "household" can mean "persons living together, intending to form a social unit." But the

majority maintains that it could also mean that these persons must be "related by blood, marriage or adoption." Therefore they conclude that the term is ambiguous.

Dictionaries define "household" to include "a social unit comprised of those living together in the same dwelling place," *see Websters Third New International Dictionary* (3d ed. 1996), or "a domestic establishment including the members of a family and others living under the same roof," *see American Heritage Dictionary* (6th ed. 1976), or "a family living together or a group of people who dwell under the same roof." *See Black's Law Dictionary* (8th ed. 2004). Black's defines "family" as "a group of persons who live together and have a shared commitment to a domestic relationship." *Id.* In my view the policy definition of "household" in this case correlates with its dictionary definitions. It is not ambiguous.

We all know that, in interpreting contract provisions, the intent of the parties is of first importance. 11 *Williston on Contracts* § 30:2 (4th ed.). We also all know that an ambiguous provision is construed against the drafter of the contract. *Id.* at § 32:12. However there must be *real* ambiguity present. It is not enough that two *possible* interpretations *could be* present. *Id.* at §

30:5.  An ambiguity "does not exist merely because a contract can possibly be interpreted in more than one manner." *See Lawyers Title Ins. Corp. v. JDC (America) Corp.*, 52 F.3rd 1575, 1580 (11th Cir. 1995)(citations omitted).

For those persons living together, intending to form a social unit, does the addition of the words  "related by blood, marriage or adoption" create an ambiguity?  I think not.[1]  The interpretation offered by Mr. Gimopoulos and Ms. Roberts is unreasonable.

I would reverse.

But, in all fairness, we really should not decide this case at all.  Here we have a Florida contract involved in an insurance dispute in which Florida has a special interest. *See McCarran-Ferguson Act*, 15 U.S.C. § 1012(a).  No federal interest is implicated.

We should certify this question to the Florida Supreme Court.  It would not be an imposition on their time.

---

[1] For example, it excludes "significant others" who live together.  There is no reason to exclude significant others when their *inclusion* supports the intent of the provision.  Or, taking another example, if one of the couple who are living together has a child from a previous relationship, that is not adopted by the other, the child is in the household of its parent but not in the household of the parent *in loco parentis*.  Neither would a foster child be a member of the household.  A orphaned child "taken in" and reared by a couple would be a member of the household if distantly related to the parents but not if he or she was the child of a deceased close friend.