[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 30, 2008
THOMAS K. KAHN
CLERK

No. 06-14626

_____

D. C. Docket No. 05-81014-CV-DMM

ROBERT FRULLA,
on behalf of himself and as Representative of
a Class of persons similarly situated,

Plaintiff-Appellant,

versus

CRA HOLDINGS INC.,
f.k.a. International Controls Corp.,
CRA HOLDING INC. EMPLOYEE WELFARE BENEFIT PLAN,
f.k.a. International Controls Corp. Group Health
Insurance Plan,
JOHN DOE 1-10,
as Plan Administrators and/or Fiduciaries of the CRA
Holding Inc. Employee Welfare Benefit Plan, Lake
Resources, Inc.,
LAKE RESOURCES, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 30, 2008)**

Before BIRCH and FAY, Circuit Judges, and DUFFEY,* District Judge.

BIRCH, Circuit Judge:

In this case we must decide whether a consent decree ("the Agreed Judgment") obligating the Appellee CRA Holdings, Inc. ("CRA") to provide to the retirees of a predecessor corporation lifetime health care coverage under an insurance plan precludes the imposition of a contribution requirement. The district court denied Appellant Frulla's request for a declaratory judgment that the contribution requirement violates the Agreed Judgment. We REVERSE.

## I. BACKGROUND

### A.     The Original Action

Robert Frulla, a retired employee of the original corporation, Transway International Corporation ("Transway"), received benefits under the Transway International Corporation Group Insurance Plan for Non-Union Employees of Transway and Subsidiaries ("Transway Plan").  In December of 1985, Transway merged into International Controls Corp. ("ICC").  Pursuant to the Merger Agreement, ICC undertook to provide the Transway retirees with benefits "comparable to, and in no event less than, the benefits provided by the [Transway Plan]."  One year later, however, ICC informed the Transway retirees that it

---

* Honorable William S. Duffey, Jr., United States District Judge for the Northern District of Georgia, sitting by designation.

intended to provide them with a new plan, effective 1 January 1987, which, among other things, increased the deductible amount on claims for individuals from $50 to $200. The plan also reserved the ICC's right to modify or terminate benefits and "to amend, modify, or terminate the Plan, including the right to require or increase Employee contributions under the Plan at any time. . . without regard to business or financial necessity."

In March of 1988, four retired Transway employees who were participants in the original Transway Plan filed a class action lawsuit (the "Original Action") against ICC, Transway, and the new International Controls Corp. Group Health Insurance Plan ("ICC Plan") challenging the amendment to the ICC Plan. In their complaint, the plaintiffs alleged that the new deductible provision effected an unauthorized diminution of benefits available under the Transway Plan as adopted by ICC and sought to permanently enjoin ICC from enforcing any reduction in benefits that were available under the Transway Plan before 1 January 1987, or from altering, amending, terminating, or in any way modifying the benefits of the Transway Plan. The defendants answered and denied that there was any agreement to immunize plaintiffs or members of the class from periodic modifications of either the Transway or ICC Plans, both of which reserved, in their summary plan descriptions, the right to make such modifications.

3

In October of 1992, the parties to the Original Action entered into a proposed Settlement Agreement and Release ("Settlement Agreement"), in which ICC agreed to provide to the plaintiffs and other Class members ". . . the same health insurance benefits ICC is providing members of the Class today under the policy issued by Travelers Insurance Company; these benefits will be provided by ICC for the lives of the Class members."  After finding that the Settlement Agreement was fair and reasonable, the district court entered an Agreed Judgment in January of 1993 resolving the litigation. The Agreed Judgment, which incorporated the Settlement Agreement,  provides that ". . . ICC shall provide the members of the Class . . . in accordance with the terms of the fully executed Settlement Agreement, the same health insurance benefits ICC is providing members of the Class today under the policy issued by Travelers Insurance Company; these benefits will be provided by ICC for the lives of the Class members."  The Agreed Judgment binds the parties to the Original Action and any successors or assigns and contains an integration clause providing that it "resolves all issues between the Defendants and the Class relating to the provision of health and life insurance by the Defendants which are raised or could have been raised by the pleadings filed in this lawsuit."

B.      **Modification of the ICC Plan**

On or about 20 December 1996, ICC changed its name to Great Dane Holdings Inc. and the ICC Plan became the Great Dane Holdings Inc. Employee Welfare Benefit Plan (the "Great Dane Plan"). In January of 1997, Great Dane Holdings Inc. changed its name to CRA Holdings Inc. ("CRA") and the Great Dane Plan became the CRA Holdings Inc. Employee Welfare Benefit Plan ("CRA Plan"). The parties agree that CRA and the CRA Plan were, under the names International Controls Corp. and International Controls Corp. Group Health Insurance Plan, respectively, defendants in the Original Action and thus subject to the terms of the Agreed Judgment.

In May of 2005, after consultation with actuaries and analysis of the financial viability of the CRA Plan, CRA determined that the CRA Plan was actuarily unsound and, consequently, amended the CRA Plan to require a $50 per month contribution from Transway retirees participating in the CRA Plan and a $100 per month contribution from retirees who also had coverage for their eligible dependents. Under the new amendment, retired employees of Transway, including class members in the Original Action, who failed to make the required monthly contribution would forfeit their right to all future participation in the CRA Plan. Payment of these contributions has been a condition of continued coverage under the CRA Plan for Transway retirees since the amendment became effective on 1

5

June 2005. At all times prior to the amendment, including the date of the 1992 Settlement Agreement and the 1993 Agreed Judgment, neither the CRA Plan nor its predecessors required participant contributions. Although as of 1 April 2005 the trust from which benefits under the CRA Plan are paid had assets of $2,857,539, the parties stipulated that CRA is no longer actively engaged in business and does not have the ability to make any contributions to the CRA Plan.

## C.     Current Litigation

On 10 November 2005, Frulla filed a complaint in district court seeking a declaratory judgment that the Agreed Judgment in the Original Action obligates CRA to provide health care benefits to the class of retirees for life, without monthly contributions or other payment.[1] Frulla also sought injunctive relief prohibiting CRA from enforcing its contribution requirement and an order requiring CRA to return any monthly contributions already made. Frulla stipulated that in the event he were to prevail, he would not seek to void the amendment to the CRA Plan, nor to enjoin further amendments to the CRA Plan, "all without prejudice to [him] seeking such relief and recovery in any subsequent litigation brought by [Frulla]."

Following a bench trial, the district court found that the Agreed Judgment

---

[1]Although Frulla purported to proceed as a class representative, no class was certified in this action.

6

did not preclude CRA from requiring contributions because the parties did not intend for "the same health insurance benefits" to include the contribution policy. The district court denied Frulla's request for declaratory relief accordingly, and Frulla appeals.

## II. DISCUSSION

At the outset, we note that although neither party challenges our jurisdiction, we are obligated to address jurisdictional questions sua sponte. See AT&T Mobility, LLC v. National Ass'n for Stock Car Auto Racing, Inc., 494 F.3d 1356, 1359 (11th Cir. 2007) (internal quotations and citation omitted) ("Standing . . . is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims."); Florida Ass'n of Rehab. Facilities, 225 F.3d 1208, 1227 n.14 (11th Cir. 2000) ("[M]ootness is a jurisdictional issue that must be resolved at the threshold."). Following oral argument, we asked the parties to brief the issue of whether, given that CRA no longer is actively engaged in business and is unable to contribute to the CRA Plan, this appeal presents a justiciable case or controversy for purposes of standing. We conclude that it does.

Under Article III of the Constitution, federal courts may only hear "cases or controversies." Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60, 112 S. Ct. 2130, 2135-36 (1992). The doctrine of mootness, which evolved directly from

7

Article III's case-or-controversy limitation, provides that "the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Tanner Adver. Group, L.L.C. v. Fayette County, Ga., 451 F.3d 777, 785 (11th Cir. 2006) (en banc) (citation omitted). "A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." Ethredge v. Hail, 996 F.2d 1173, 1175 (11th Cir. 1993). On the other hand, a case or controversy justifying declaratory relief exists where "the challenged [ ] activity . . . is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." See Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 122, 94 S. Ct. 1694, 1698 (1974). Where declaratory relief is sought, "the question. . . is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S. Ct. 510, 512 (1941); see also Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240-41, 57 S. Ct. 461, 464 (1937) (holding that a live controversy "admit[s] of specific relief through a decree of a conclusive character, as distinguished from

8

an opinion advising what the law would be upon a hypothetical state of facts").

So long as CRA continues to require contributions as a precondition to receiving lifetime health care benefits, the parties' dispute over whether employee contributions violate the Agreed Judgment remains a live controversy that "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." Haworth, 300 U.S. at 242, 57 S. Ct. at 465; see Super Tire Eng'g Co., 416 U.S. at 122, 94 S. Ct. at 1698. That the CRA Plan apparently has no active source of funding other than the challenged employee contributions, and may not remain financially viable in their absence, does not alter this result. While both parties acknowledge in their supplemental briefs that CRA is unable to make contributions, and that, as a result, the CRA Plan will run out of money sooner, rather than later, if required contributions from the Transway retirees are deemed impermissible under the Agreed Judgment, there is no evidence, nor has CRA alleged, that the CRA Plan currently is insolvent or unable to provide benefits to Frulla if the contribution requirement is rescinded as a result of this litigation.

Having determined that this appeal presents a live controversy with respect to which we may give meaningful relief, we turn to the merits. We review the denial of declaratory relief for an abuse of discretion. See Ameritas Variable Life

9

Ins. Co. v. Roach, 411 F.3d 1328, 1330 (11th Cir. 2005). Under this standard, "we will leave undisturbed a district court's ruling unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." Id.

On appeal, Frulla contends that the Agreed Judgment clearly and unambiguously prohibits the imposition of a contribution requirement because the obligation to "provide" benefits necessarily includes an obligation to *pay for* those benefits. He argues additionally that, insofar as the Agreed Judgment obligates CRA to provide *lifetime* benefits, it unambiguously prohibits CRA from terminating those benefits upon the failure of the retirees to pay the monthly contributions. Finally, Frulla contends that the term "benefits" refers to the total economic value of the plan, and therefore, the contribution requirement effects a reduction in benefits in violation of the Agreed Judgment.

CRA counters that its right to require contributions is not precluded or otherwise limited by the Agreed Judgment because the absence of a contribution requirement is not a "benefit." It concedes that the Agreed Judgment limits its right to reduce the value of the benefits or to terminate the plan, but contends that imposing a contribution requirement is a funding decision that does not modify or reduce benefits and, therefore, is unaffected by the Agreed Judgment.

The district judge concluded first that the Agreed Judgment did not clearly

delineate the parties' rights and obligations because the provision requiring CRA to "provide. . . the same health insurance benefits" was ambiguous and did not fit either party's interpretation as an intrinsic matter. After considering the ICC Plan as evidence of the parties' intent, he found that "benefits" are limited to the amounts payable by the plan for designated medical services. Because the contribution requirement is paid into the plan by the retirees, and not out of the plan to healthcare providers, and applies uniformly to all retirees irrespective of the medical services they receive, the district court concluded that the presence or absence of a contribution requirement is not a "benefit," and therefore, imposing a contribution requirement does not violate the Agreed Judgment.

We interpret a consent decree as we would a contract, applying principles of Florida's general contract law. See Schwartz v. Florida Bd. of Regents, 807 F.2d 901, 905 (11th Cir. 1987); Paradise v. Prescott, 767 F.2d 1514, 1525 (11th Cir. 1985). Under Florida law, we must construe a contract to give effect to the parties' intent. See Barakat v. Broward County Housing Auth., 771 So. 2d 1193, 1194 (Fla. Dist. Ct. App. 2000). Where the contractual terms are unambiguous, we must determine the parties' intent from within the four corners of the contract. Id.

We review de novo the threshold question of whether a contract is ambiguous. See Reynolds v. Roberts, 202 F.3d 1303, 1313 (11th Cir. 2000). A

11

contract is ambiguous where it "is susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract." Commercial Capital Res., LLC v. Giovannetti, 955 So. 2d 1151, 1153 (Fla. Dist. Ct. App. 2007); see also Continental Ins. Co. v. Roberts, 410 F.3d 1331, 1333 (11th Cir. 2005) (applying Florida law). If the interpretation urged by one party is unreasonable in light of the contract's plain language, the contract is not ambiguous, and the court may not use extrinsic evidence to vary the terms of the contract. See Orkin Exterminating Co., Inc. v. F.T.C., 849 F.2d 1354, 1362 (11th Cir. 1988). In determining whether a contract is ambiguous, we must first look at the words on the face of the contract. See Rose v. M/V "Gulf Stream Falcon," 186 F.3d 1345, 1350 (11th Cir. 1999).

The Agreed Judgment provides that CRA, as ICC's successor, "shall provide the members of the Class. . . in accordance with the fully executed Settlement Agreement, *the same health insurance benefits ICC is providing members of the Class today* under the policy issued by Travelers Insurance Company; these benefits *will be provided by ICC for the lives of the Class members*." (emphasis added).[2] The parties agree that this language prohibits CRA from amending the

_____

[2]Although the ICC Plan expressly reserves ICC's right to impose employee contributions, neither the ICC Plan nor the reservation-of-rights passage contained therein was incorporated into the Agreed Judgment. Rather, the Agreed Judgment refers only to ICC's obligation to provide lifetime "benefits" to the retirees. Had ICC wanted to ensure that its right to modify the

12

CRA Plan in a way that reduces or modifies the benefits the Transway retirees were receiving under the ICC Plan, but disagree over whether the challenged contributions have the effect of reducing or modifying those benefits. We find that they do. It is axiomatic that a plan *without* a contribution requirement is more advantageous to the participant than a plan *with* a contribution requirement. This is because the overall total economic value of the benefits received under a plan decreases as the cost of those benefit increases. Because the level or existence of an employee contribution thus directly affects the value of the benefits received, we hold that not having to pay a contribution is a benefit of a health care plan. See Magliulo v. Metropolitan Life Ins. Co., 208 F.R.D. 55, 57 (S.D.N.Y. 2002) (finding that a higher monthly premium charge effects a reduction in benefits received under an insurance plan because "the benefit due from [an] insurance plan is to receive health coverage for a certain price").

The conclusion we reach today is in accord with both the ordinary meaning of a "benefit"[3] and our decision in Heffner v. Blue Cross & Blue Shield of Ala.,

---

Plan's funding structure would not be limited by the Agreed Judgment, it could have reserved that right explicitly in the Settlement Agreement. It did not, and we decline to read into the plain language of the Agreed Judgment a condition on ICC's otherwise unqualified obligation to provide lifetime benefits to the retirees that is not explicitly stated. See Schwartz, 807 F.2d at 906.

[3] Black's Law Dictionary defines a "benefit" as an "advantage" or a "privilege," such as "the benefit of owning a car." Black's Law Dictionary 166 (8th ed. 2004). Elsewhere, a "benefit" is defined as "1. something that is advantageous or good; an advantage: *He explained*

13

Inc., 443 F.3d 1330 (11th Cir. 2006). In Heffner, we stated, albeit in dicta, that "not having to pay a deductible is a benefit of [an insurance plan]" because a deductible decreases, "in real economic terms," the value of the benefits offered under the plan. Id. at 1338. As we have discussed, the employee contributions at issue in this case likewise decrease, in real economic terms, the value of the benefits received under the CRA Plan to the extent that they increase the cost of those benefits. See id. (noting that the value of benefits offered under a plan "varies inversely with the amount of the deductible").[4] In light of the foregoing, we conclude that the Agreed Judgment precludes CRA from requiring employee contributions as a precondition to continued eligibility for coverage under the CRA Plan and is not reasonably or fairly susceptible to any other interpretation.

## III. CONCLUSION

Because we hold that the absence of a contribution requirement is a

---

*the benefits of public ownership of the postal system. 2. a payment or gift, as one made to help someone or given by a benefit society, insurance company, or public agency*." Random House Dictionary of the English Language 194 (2d ed. 1987). See Robin v. Sun Oil Co., 548 F.2d 554, 557 (5th Cir. 1977) ("We must accord to the words [in a contract] their plain, literal meaning."); Thompson v. C.H.B., Inc., 454 So. 2d 55, 57 (Fla. App. 1984) (holding that an undefined contractual term "should be given [its] natural meaning").

[4] The district court attempted to find ambiguity in the Agreed Judgment by distinguishing deductibles from contributions on the basis that, unlike contributions, which are paid uniformly by all participants into the plan, deductibles reduce the amount the plan will pay for a particular medical service and thus are directly related to the value of a plan's benefits. We find this reasoning unpersuasive, however, because it presupposes that "benefits" under a healthcare plan include only amounts paid out by the plan for designated medical services.

14

"benefit" of a health insurance plan, we find that the district court abused its discretion in denying Frulla's request for a declaratory judgment that he is entitled under the Agreed Judgment to receive healthcare benefits without having to make monthly contributions. Accordingly, the judgment of the district court is **REVERSED**.