[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-11989

_____

D.C. Docket No. 1:13-cv-23838-MGC


MARIPOSA ASSOCIATES, LTD.,
a Florida limited partnership,

Plaintiff-Appellant,

versus

REGIONS BANK,
an Alabama banking corporation,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 14, 2017)

Before HULL, MARCUS, and CLEVENGER[*], Circuit Judges.

PER CURIAM:

Plaintiff-appellant Mariposa Associates, Ltd. ("Mariposa") appeals the district court's grant of summary judgment in favor of defendant-appellee Regions Bank ("Regions").[1] The parties agree that Florida law applies to their breach-of-contract dispute.[2]

## I. THE ST. LUCIE LOAN

In June 2005, plaintiff Mariposa entered into an agreement with AmSouth Bank, now defendant Regions, in order to obtain a $2,800,000 loan (the "St. Lucie Loan"). The St. Lucie Loan was evidenced by a loan agreement (the "St. Lucie Loan Agreement"), a promissory note (the "St. Lucie Note"), and a mortgage (the "St. Lucie Mortgage"), which granted to defendant Regions a first mortgage lien

---

[*]Honorable Raymond C. Clevenger, United States Circuit Judge for the Federal Circuit, sitting by designation.

[1]We review de novo the district court's grant of summary judgment, considering the evidence and the inferences therefrom in the light most favorable to the nonmoving party. Ellis v. England, 432 F.3d 1321, 1325 (11th Cir. 2005) (per curiam). Summary judgment is appropriate where the evidence "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute where the evidence would allow a reasonable jury to find in favor of the nonmoving party. Ellis, 432 F.3d at 1325-26.

[2]In analyzing a contract under Florida law, we must look first to the "words used on the face of the contract to determine whether that contract is ambiguous." Rose v. M/V "Gulf Stream Falcon", 186 F.3d 1345, 1350 (11th Cir. 1999). In Florida, "the actual language used in the contract is the best evidence of the intent of the parties and, thus, the plain meaning of that language controls." Id. Whether a contract term is ambiguous is a matter of law. Arriaga v. Fla. Pac. Farms, LLC, 305 F.3d 1228, 1246-47 (11th Cir. 2002). We review de novo whether a contract's language is ambiguous. Harris Corp. v. Giesting & Assocs., Inc., 297 F.3d 1270, 1272 (11th Cir. 2002).

on a property in St. Lucie County, Florida (the "St. Lucie Property").  At the time of the loan, the St. Lucie Property was being used as a trailer park, but the parties planned for that trailer park to be turned into a townhome development.

Under the St. Lucie Note, which Mariposa signed, Mariposa agreed to the release of any security and further agreed that Regions "shall not be required" to "perfect or enforce its rights" against any security:

> Maker and all sureties, endorsers, guarantors and any other party now or hereafter liable for the payment of this Note in whole or in part, hereby severally (i) waive demand . . . and all other notices (except any notices which are specifically required by this Note or any other Loan Document) . . . (ii) agree to any substitution, subordination, exchange or release of any such security or the release of any party primarily or secondarily liable hereon; (iii) agree that the holder hereof shall not be required first to institute suit or exhaust its remedies hereon against Maker or others liable or to become liable hereon or to perfect or enforce its rights against them or any security herefor[.]  (emphasis added).

The St. Lucie Note also explicitly contemplated that Regions may "sell or offer to sell the loan evidenced by this Note."

## II.  THE MIAMI-DADE LOAN

Shortly after making the St. Lucie Loan, defendant Regions loaned $10,400,000 (the "Miami-Dade Loan") to two companies that were associated with and controlled by Mariposa's principals (the "Miami-Dade Borrowers") for the purchase of real property in Miami-Dade County, Florida (the "Miami-Dade Property").  To secure the Miami-Dade Loan, the Miami-Dade Borrowers granted

to defendant Regions a first mortgage lien on the Miami-Dade Property, which consisted of approximately 46 acres near the Miami Dolphins football stadium.

## III.  THE SPREADER AGREEMENT

In mid-2007, defendant Regions became concerned that the St. Lucie Loan was under-collateralized.  At the same time, the Miami-Dade Property was worth significantly more than the loan it was securing.  Thus, in summer 2007, defendant Regions, plaintiff Mariposa, and the Miami-Dade Borrowers entered into an agreement to cross-collateralize the two loans (the "Spreader Agreement").  Pursuant to the Spreader Agreement, the St. Lucie Loan became secured by both a first mortgage lien on the St. Lucie Property and a second mortgage lien on the Miami-Dade Property; and the Miami-Dade Loan became secured by both a first mortgage lien on the Miami-Dade Property and a second mortgage lien on the St. Lucie Property.

## IV.  THE MARIPOSA AMENDMENT

In June 2008, plaintiff Mariposa and defendant Regions (but not the Miami-Dade Borrowers) executed an amendment to the St. Lucie Loan Agreement (the "Mariposa Amendment").  The Mariposa Amendment provided in relevant part:

> In the event of the sale of a portion of the Premises (consisting of an 8 acre outparcel), Borrower [Mariposa] shall pay Lender [Regions] the net proceeds from such sale, which shall be applied: (i) to reduce the outstanding principal balance of the Loan; (ii) to replenish the interest

4

reserve account in connection with: (a) the Loan and (b) that certain loan by Lender to [the Miami-Dade Borrowers] as evidenced by that certain Amended and Restated Promissory Note dated effective June 27, 2008 in the original principal amount of $10,850,000 ("Emerald Point Loan"); (iii) to pay 2007 ad valorem real estate taxes as described in subparagraph (f) hereof; and/or (iv) to pay 2008 ad valorem real estate taxes in connection with the Premises and the property that is security for the Emerald Point Loan (the "Emerald Point Property"). (emphasis added).

The Mariposa Amendment defined the "Loan" as the St. Lucie Loan. While the Mariposa Amendment did not define the term "Premises," Paragraph 2 of the Mariposa Amendment provided that "capitalized terms used but not defined herein shall have the meanings set forth in the Agreement." The Mariposa Amendment defined the "Agreement" as the "Loan Agreement [between Mariposa and Regions] dated June __, 2005." And the St. Lucie Loan Agreement "dated June __, 2005" defined "Premises" as the St. Lucie Property.[3] Thus, the term "Premises" in the Mariposa Amendment meant the St. Lucie Property. Furthermore, the plain language of this provision contemplated only the sale proceeds that the Borrower (Mariposa) would pay to the Lender (Regions) upon a sale of a portion of the Premises.

While "Premises" was defined as the St. Lucie Property, there was no eight-acre outparcel in the St. Lucie Property. At point in time, there was an eight-

---

[3]Specifically, the St. Lucie Loan Agreement defined the "Premises" as "[t]he Land and all Improvements." The term "Land and all Improvements" is defined in the St. Lucie Loan Agreement as "certain real property which is approximately 9.88 acres situated in St. Lucie County, Florida, . . . (the 'Land'). The Port St. Lucie Mobile Home Park ('Trailer Park') and related amenities are located on the Land (collectively the 'Improvements')."

acre outparcel in the Miami-Dade Property that was, at one point, under contract to be sold for $5,800,000.

Whatever the Premises was, the Borrower (Mariposa) never sold the Premises. Rather, as explained below, a subsequent purchaser of the St. Lucie Loan foreclosed on the St. Lucie Property. Therefore, the trigger contained in the Mariposa Amendment never occurred because the Borrower (Mariposa) never sold the Premises.[4]

## V.  THE MIAMI-DADE AMENDMENT

At the same time, defendant Regions and the Miami-Dade Borrowers (but not plaintiff Mariposa) executed a similar amendment to their loan agreement (the "Miami-Dade Amendment"). The Miami-Dade Amendment contained a provision directing the proceeds from "the sale of a portion of the Premises (consisting of an 8 acre outparcel)":

> In the event of the sale of a portion of the Premises (consisting of an 8 acre outparcel), Borrower shall pay Lender the net proceeds from such sale, which shall be applied: (i) to reduce the outstanding principal balance of the Loan; (ii) to replenish the interest reserve account in connection with: (a) the Loan and (b) that certain Loan by Lender to

---

[4]The parties hotly contest whether this contract provision is ambiguous. Because this provision of the Mariposa Amendment explicitly directs what Mariposa (as Borrower) shall pay to Regions (as Lender) in the event of a sale of the Premises (which is defined as the St. Lucie Property), we agree with defendant Regions that interpreting the provision to mean that Mariposa, who was never the owner of the Miami-Dade Property, would somehow obtain from Regions (as opposed to paying to Regions) the proceeds from the sale of property they did not own is not a reasonable construction of the contract. See Frulla v. CRA Holdings, Inc., 543 F.3d 1247, 1252 (11th Cir. 2008) (citing to Florida law and stating that a contract is only ambiguous if it is susceptible to two different reasonable interpretations).

6

Mariposa Associates, Ltd., a Florida limited partnership, as evidenced by that certain Fourth Amended and Restated Promissory Note dated effective June 27, 2008 in the original principal amount of $2,800,000.00 ("Mariposa Loan"); (iii) to pay 2007 ad valorem real estate taxes as described in subparagraph (f) hereof; and/or (iv) to pay 2008 ad valorem real estate taxes in connection with the Premises and the property that is security for the Mariposa Loan (the "Mariposa Property").

The Miami-Dade Amendment defined "Loan" as the Miami-Dade Loan. As Mariposa admitted, the Miami-Dade Amendment provided that the proceeds from a sale of the Miami-Dade outparcel would go to pay the Miami-Dade Loan.

## VI.  REGIONS SELLS THE ST. LUCIE LOAN

In September 2008, defendant Regions sold the promissory note and security instruments for the St. Lucie Loan to a third-party investor (the "Note Purchaser") for $1,350,000. Defendant Regions and the Note Purchaser agreed that "notwithstanding the cross collateralization" of the St. Lucie Loan and the Miami-Dade Loan, the Note Purchaser would release any claim or lien it might have to the Miami-Dade Property, leaving the St. Lucie Loan secured only by the St. Lucie Property. In connection with this sale, defendant Regions also "release[d] the [St. Lucie Property] from securing the [Miami-Dade Loan]," leaving the Miami-Dade Loan secured only by the Miami-Dade Property. Mariposa did not sign or consent to this sale of the St. Lucie Loan.

7

## VII.  THE FORECLOSURE ACTIONS

In January 2009, defendant Regions filed an action to foreclose on the Miami-Dade Property that secured the Miami-Dade Loan (the "Miami-Dade Action").  In settlement of the Miami-Dade Action, Regions agreed to a "short sale" of the Miami-Dade Property.  On August 27, 2009, the Miami-Dade Property—including the eight-acre outparcel—was sold for $7,685,000.  The proceeds of this sale went to Regions, who agreed to release the balance due on the Miami-Dade Loan as satisfied.  Thus, it took all of the sale proceeds of the Miami-Dade Property to satisfy the Miami-Dade Loan.

Around the same time, Mariposa defaulted on the St. Lucie Loan, and the Note Purchaser sued Mariposa on the promissory note and also filed a foreclosure action against the St. Lucie Property (the "St. Lucie Action").  In April 2013, the Note Purchaser won a judgment on the promissory note against Mariposa in the amount of $6,333,025.37.

## VIII.  MARIPOSA FILES THE INSTANT LAWSUIT

In September 2013, plaintiff Mariposa sued defendant Regions for breach of contract in Florida state court. Mariposa alleged that Regions breached the Mariposa Amendment when it released the Miami-Dade Property as collateral for the St. Lucie Loan, and failed to apply the proceeds of the sale of the Miami-Dade

8

Property to the St. Lucie Loan, thus causing the adverse judgment against Mariposa (the Borrower) in the St. Lucie Action.

Defendant Regions timely removed the case to federal court and subsequently moved for summary judgment, arguing that the unambiguous terms of the loan documents for the St. Lucie Loan showed that Regions was entitled to act as it did.

## IX.  DISTRICT COURT GRANTS SUMMARY JUDGMENT TO REGIONS

The district court granted summary judgment to defendant Regions on the basis that various terms of the loan documents demonstrated that plaintiff Mariposa was not entitled to relief as a matter of law.  Specifically, the district court determined that defendant Regions was not required to pursue the Miami-Dade Property before enforcing the St. Lucie Note because, by its plain terms, the St. Lucie Note provided Regions with the unilateral right to release <u>any</u> collateral securing the Loan.  Thus, Regions's release of the lien it had over the Miami-Dade Property could not form the basis for a breach of contract claim by Mariposa on the St. Lucie Loan.

The district court also determined that, because the Mariposa Amendment contained an "and/or" clause in the provision directing proceeds from the sale of the outparcel, the Mariposa Amendment did not require Regions to <u>first</u> apply the sale proceeds towards the repayment of the St. Lucie Loan.  The district court

9

concluded that, given the unambiguous language of the Mariposa Amendment, it could not consider either the parties' intent or the contemporaneous Miami-Dade Amendment. In any event, the district court determined that the Mariposa Amendment was unenforceable because it was a mortgage and the mortgagor—the Miami Dade Borrowers—never signed it. Therefore, the district court concluded that the material terms of the loan agreements were unambiguous and, under those terms, Regions was entitled to judgment as a matter of law.

After careful review, and with the benefit of oral argument from counsel for both parties, we find no reversible error in the district court's entry of summary judgment in favor of defendant Regions on plaintiff Mariposa's breach of contract action. We need not analyze all of the possible grounds for summary judgment but need only point out that the promissory note signed by Mariposa gave Regions a unilateral right to release any collateral, which Regions did when it sold the St. Lucie Loan and collateral to the Note Purchaser. Further, the triggering sale in the Mariposa Amendment never occurred as the Borrower (Mariposa) never sold the property (the St. Lucie Property). Indeed, Mariposa never owned, much less sold, the Miami-Dade Property.

**AFFIRMED.**